**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA
CIVIL DIVISION**

**KRYSTLE RYAN, on behalf of herself
and on behalf of all others
similarly situated,**

      **Plaintiff,**

**v.**                                **CASE NO.:**

**BG STAFFING, LLC,**

      **Defendant.**

_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, KRYSTLE RYAN ("Plaintiff"), by and through undersigned counsel, and on behalf of herself, the Putative Class set forth below, as well as in the public interest, brings the following Class Action as of right against Defendant, BG STAFFING, LLC ("Defendant") under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. § 1681 *et seq.*

## PRELIMINARY STATEMENT

1.      Defendant BG STAFFING, LLC owns and operates a business staffing and talent acquisition company.

2.      At all timer material hereto, Defendant is a foreign Delaware limited liability company, headquartered in Texas, and going business in Tampa, Florida which lies in Hillsborough County.

3.      At all times material hereto, Defendant was subject to personal jurisdiction in the State of Florida under the Florida Long Arm Jurisdiction Act, Fla. Stat. § 48.193.

Defendant is subject to personal jurisdiction in Florida, because it caused injury in the State of Florida through its acts and omissions outside of the State of Florida.

4.      Defendant routinely obtains and uses information in consumer reports to conduct background checks on prospective and current employees, and frequently relies on such information, in whole or in part, as a basis for taking adverse employment action, such as termination of employment, reduction in working hours, demotion, failure to hire, and failure to promote. In this case, Defendant used a national consumer reporting agency, Backgroundchecks.com, to procure consumer reports on Plaintiff and the putative class members she seeks to represent, but did so in violation of the FCRA.

5.      The FCRA, 15 U.S.C. §1681b makes it presumptively unlawful to obtain and use a "consumer report" for an employment purpose.  Such use becomes lawful if and only if the "user" – in this case Defendant – complied with the statute's strict disclosure and authorization requirements.  15 U.S.C. § 1681b(b)(2).

6.      Defendant willfully violated these requirements in multiple ways and in systematic violation of Plaintiff's rights, and as to the rights of the other putative class members.

7.      First, Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other putative class members for employment purposes, without first making proper disclosures to them in the format required by the statute. Under this subsection of the FCRA, Defendant is required to disclose to its employees—in a document that consists solely of the disclosure—that it may obtain a consumer report on them for employment purposes. This disclosure must be made by employers prior to

obtaining copies of employees', or prospective employees', consumers reports. *Id.* Defendant willfully violated this requirement by failing to provide Plaintiff and other putative class members with a copy of a separate document solely consisting of Defendant's disclosure, stating that Defendant may obtain a consumer report on any person for employment purposes. Defendant also violated this requirement by failing to provide this disclosure to Plaintiff and other putative class members **prior** to obtaining a copy of the person's consumer report. (Emphasis added). This practice violates long-standing regulatory guidance from the Federal Trade Commission ("FTC").

8.    Second, Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by obtaining consumer reports for Plaintiff and other putative class members without proper authorization, due to the fact that its disclosure forms fail to comply with the requirements of the FCRA.

9.    Based on the foregoing violations, Plaintiff asserts FCRA claims against Defendant on behalf of herself and a putative class, consisting of Defendant's employees and prospective employees.

10.    In Counts I and II, Plaintiff asserts a pair of FCRA claims under 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii), on behalf of a "Improper Disclosure and Authorization Class," consisting of all of Defendant's employees and prospective employees in the United States who were the subject of a consumer report that was procured by Defendant within five years of the filing of this complaint through the date of final judgment in this action, and who did not receive a clear, conspicuous, separate form disclosure in writing, and did not

3

authorize the procurement of the report in writing, as required under 15 U.S.C. § 1681b(b)(2)(A).

11.     On behalf of herself and the Putative Class identified above, Plaintiff seeks statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief under the FCRA.

**THE PARTIES**

12.     Individual and representative Plaintiff K R Y S T L E   R Y A N ("Plaintiff") lives in T a m p a ,   F l o r i d a . Plaintiff is a former employee of Defendant. She is a natural person and is a consumer as defined by the FCRA, 15 U.S.C. § 1681a(c)

13.     Defendant is a Delaware Limited Liability Company headquartered in Plano, Texas. Defendant is a corporation and a user of consumer reports as contemplated by the FCRA, 15 U.S.C. § 1681b.

**JURISDICTION AND VENUE**

14.     This Court has federal question jurisdiction over Plaintiff's FCRA claims under 28 U.S.C. § 1331.  This Court also has subject matter jurisdiction over Plaintiff's claims under the FCRA, 15 U.S.C. §§ 1681n and 1681p.

15.     This Court has personal jurisdiction over Defendant under the Florida Long Arm Jurisdiction Act, Fla. Stat. Section 48.193.

16.     Furthermore, this Court's exercise of personal jurisdiction over Defendant is constitutionally sound. Through its operations in Tampa, Florida, in Hillsborough County, Defendant has established sufficient minimum contacts with the State of Florida to make it reasonably foreseeable that Defendant could be sued in Florida. Defendant will

suffer no unfair prejudice from the exercise of this Court's personal jurisdiction, which serves the interests of justice in this case.

17.    Venue is proper in the United States District Court for the Middle District of Florida under 28 U.S.C. § 1391. Plaintiff resides in, Florida, worked for Defendant in Tampa, Florida. A substantial part of Plaintiff's claims arose in Tampa, Florida, where Defendant regularly conducts business. Venue is proper in the Middle District because the majority of the events giving rise to these claims occurred in this District.

## ALLEGATIONS REGARDING DEFENDANT'S BUSINESS PRACTICES
### *Defendants Willful Violation of 15 U.S.C. §1681b(b)(2)*

18.    In January 2017, Plaintiff applied to work for Defendant as a leasing consultant.

19.    When she first applied Plaintiff received Defendant's Job Application, as do all job applicants, which is attached as Exhibit A.

20.    Under the FCRA, it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes, unless:

(i)    a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists solely of the disclosure*** that a consumer report may be obtained for employment purposes; and

(ii)    the consumer has authorized the procurement of the consumer report in writing (which authorization may be made on the document referred to in clause (i)).

15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) (emphasis added).

21.    Defendant failed to satisfy these unambiguous disclosure and authorization requirements.

5

22.    Defendant does not have a stand-alone FCRA disclosure or authorization form, clearly and conspicuously stating that a consumer report may be procured on prospective or current employees for employment purposes.

23.    It contains at least the following extraneous items of information:

a)    A liability release;

b)    A certification that all statements made in the application are true and accurate;

c)    Spaces for identification information about the application;

d)    Spaces for availability of the applicant for work assignments;

e)    Spaces for educational information about the applicant;

f)    Spaces for recent employment history of the applicant;

g)    Spaces for professional references;

h)    Spaces of emergency contact information;

i)    Equal Employment Opportunity language;

j)    A box asking whether an applicant is available to work overtime;

k)    A box asking whether an applicant will agree to a physical examination by a physician;

l)    Questions regarding special training and skills;

m)    Questions regarding professional or vocational licenses;

n)    An applicant's expected rate of pay;

o)    Certifications by the applicant of the accuracy of the information provided; and

       p)      Acknowledgement of at-will employment status.

24.    Defendant's faulty Job Application does not constitute a document consisting solely of a disclosure that a background check will be procured for employment purposes violates 15 U.S.C. § 1681b(b)(2)(A)(i).

25.    Defendant also unlawfully inserted liability release provisions into forms purporting to grant Defendants authority to obtain and use consumer report information for employment purposes. On its face the FCRA forbids this practice, since it mandates that all forms granting the authority to access and use consumer report information for employment purposes must be "stand-alone" forms that do not include any additional agreements. Defendant's decision to include a liability release provision in its authorization forms is contrary to both the plain language of the FCRA and the unambiguous regulatory guidance provided by the FTC.

26.    Specifically, Defendant's Job Application, attached hereto as Exhibit "A", demonstrates Defendant's clear intent to conduct a background check, while simultaneously purporting to release Defendant from any liability in relation to the proposed background check in the event that any information obtained proves erroneous.

27.    The release in Exhibit A reads as follows: "I also unconditionally release BG Staffing and all named and unnamed sources from any liability which might result from furnishing any information about me."

28.    The inclusion of this release provision in Defendant's form violates the FCRA. Since 1998, the FTC has specifically warned that "inclusion of such a waiver [of liability] in a disclosure form will violate Section (b)(2)(A) of the FCRA, which requires

that a disclosure consist 'solely' of the disclosure that a consumer report may be obtained for employment purposes." Letter from William Haynes, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO Accufax Div. (June 12, 1998), 1998 WL 34323756 (FTC) at *1, available at: https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-hauxwell-06-12-98.

29.    Courts that have addressed liability waivers placed in disclosure forms have agreed with the FTC that including such a waiver violates the FCRA's stand-alone disclosure requirement. *See, e.g. Singleton v. Domino's Pizza*, No. 11-1823, 2012 WL 245965 at *9 (D. Md. Jan. 25, 2012) (Stating that "both the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document."); *Reardon v. Closetmaid Corp.*, No. 2:08-cv-01730, 2013 WL 6231606 at *10-11 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance"); *Speer v. Whole Foods Market*, No. 8:14–cv–3035, 2015 WL 1456981 at *3 (M.D. Fla. Mar. 30, 2015) (denying motion to dismiss FCRA claim, given that the disclosure form contained a release and other extraneous information); *Schoebel v. American Integrity Ins. Co. of Fla.*, No. 8:15–cv–380, 2015 WL 3407895 at *6 (M.D. Fla. May 27, 2015) (holding that if a disclosure contains a release, it violates the FCRA).

30.    Defendant's conduct was knowing and reckless.

31.    Defendant knowingly and recklessly disregarded the plain meaning of 15 U.S.C. §1681b(b)(2)(A), as well as guidance from the Federal Trade Commission and numerous court decisions, including, for example, *Jones v. Halstead Mgmt. Co., LLC*, 81

F. Supp. 3d 324, 333, 2015 U.S. Dist. LEXIS 12807, *18 (S.D.N.Y. 2015), stating that the inclusion of extraneous information in the disclosure required under § 1681b(b)(2)(A) is a violation of the FCRA.

32.     Defendant knew that it had an obligation to provide a stand-alone disclosure before procuring a consumer report, but chose to place its own interests ahead of the rights of consumers.

33.     Defendant did not procure Plaintiff's report in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer.

34.     Defendant repeatedly used the same Job Application to procure background reports on numerous other applicants and employees.

35.     By systematically inserting extraneous information into Plaintiff's and other current or prospective employees'' disclosures, Defendant knowingly and willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i).

36.     Plaintiff and the putative class experienced a concrete injury from Defendant's failure to provide the statutorily-required stand-alone disclosure in at least two ways. First, Defendant invaded Plaintiff's right to privacy. Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (*i.e.*, disclosure and authorization) set forth in the following subsections: 15 U.S.C. § 1681b(b)(2). As one court put it, "[t]he FCRA makes it unlawful to procure "a

report without first providing the proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A.*, Inc., 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015). Plaintiff's report contained a wealth of private information which Defendant had no right to access absent a specific Congressional license to do so. The report included, *inter alia*, Plaintiff's date of birth, address history, social security number, and information about her criminal background. By procuring a report containing this private information without complying with these requirements, Defendant illegally invaded Plaintiff's privacy.

37.     Second, Plaintiff has suffered a concrete informational injury because Defendant failed to provide Plaintiff with information to which she was entitled by statute. Pursuant to §1681b(b)(2), Plaintiff was entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure. Such disclosure was required to be provided to Plaintiff before the consumer report was to be procured.

38.     By depriving Plaintiff of this information, Defendant injured her and the putative class members. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

39.     Based on the foregoing violations, Plaintiff asserts FCRA claims against Defendant on behalf of herself and a class of Defendant's employees, and prospective employees.

40.     On behalf of herself and the Putative Class, Plaintiff seeks statutory damages, punitive damages, costs and attorneys' fees, equitable relief, and other appropriate relief pursuant to the FCRA.

41.    Defendant procured consumer report information on Plaintiff in violation of the FCRA.

## CLASS ACTION ALLEGATIONS

42.    Plaintiff asserts claims under Counts I and II of this Complaint on behalf of a Putative Background Check Class defined as follows:

> **Improper Disclosure and Authorization Class:**    All BG Staffing, LLC employees and prospective employees in the United States who applied for or worked in a position at BG Staffing, LLC within two years of the filing of this Complaint through the date of final judgment in this action, and as to whom BG Staffing, LLC used the disclosure and authorization forms substantially similar to the one attached as Exhibit A.

43.    <u>Numerosity</u>:  The members of the Putative Class are so numerous that joinder of all Class members is impracticable.  Defendant regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and current employees, and frequently relies on such information, in whole or in part, as a basis for taking adverse employment action. Plaintiff is informed and believes that during the relevant time period, hundreds of Defendant's employees and prospective employees satisfy the definition of the Putative Classes.

44.    <u>Typicality</u>:    Plaintiff's claims are typical of those of the members of the Putative Class. Defendant typically uses consumer reports to conduct background checks on employees and prospective employees.  The FCRA violations suffered by Plaintiff are typical of those suffered by other Putative Class members, and Defendant treated Plaintiff in a manner consistent with its treatment of other Putative Class members under its standard policies and practices.

45.    <u>Adequacy</u>:    Plaintiff will fairly and adequately protect the interests of

the Putative Class, and has retained counsel experienced in complex class action litigation.

46.      Commonality:   Common questions of law and fact exist as to all members of the Putative Class, and predominate over any questions solely affecting individual members of the Putative Class. These common questions include, but are not limited to:

      a.     Whether Defendant uses consumer report information to conduct background checks on employees and prospective employees;

      b.     Whether Defendant's background check practices and/or procedures comply with the FCRA;

      c.     Whether Defendant violated the FCRA by procuring consumer report information without making proper disclosures in the format required by the statute;

      d.     Whether Defendant violated the FCRA by procuring consumer report information based on invalid authorizations;

      e.     Whether Defendant's violations of the FCRA were willful;

      f.     The proper measure of statutory damages; and

      g.     The proper form of injunctive and declaratory relief.

47.      This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1), because prosecution of actions by or against individual members of the Putative Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual Class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

48.      This case is also maintainable as a class action under Fed. R. Civ. P.

23(b)(2), because Defendant has acted or refused to act on grounds that apply generally to the Putative Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Classes as a whole.

49.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct, which is described in this Complaint, stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Putative Class do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single action, brought in a single forum.

50.     Plaintiff intends to send notice to all members of the Putative Class to the extent required by Rule 23. The names and addresses of the Putative Class members are readily available from Defendant's records.

## FIRST CLASS CLAIM FOR RELIEF

**Failure to Make Proper Disclosure in Violation of FCRA**
**15 U.S.C. § 1681b(b)(2)(A)(i)**

51.     Plaintiff alleges and incorporates by reference the allegations in paragraphs 1 though 50 of this Complaints, as though fully set forth herein.

52.     In violation of the FCRA, the background check that Defendant required the Background Check Class to complete as a condition of their employment with Defendant does not satisfy the disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i), because Defendant failed to provide a stand-alone document pertaining to how the consumer report information would be obtained and utilized.

53.     Defendant violated the FCRA by procuring consumer reports on Plaintiff and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i).  Namely, these disclosures had to be made: (1) before Defendant actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and other Background Check Class members that Defendant might procure a consumer report on each of them for purposes of employment.

54.     The foregoing violations were willful. Defendant knew that it was required to provide a stand-alone form prior to obtaining and then utilizing a consumer report on any of the Background Check Class members. By failing to do so, Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Background Check Class members under 15 U.S.C. § 1681b(b)(2)(A)(i). Defendant knew or should have known of its legal obligations under the FCRA.

55.     Defendant hired Backgroundchecks.com, a well-respected national consumer reporting agency, to procure its consumer reports on Plaintiff and the Putative

Class.

56.     Defendant's obligations are well established in both the plain language of the FCRA and in the promulgations of the Federal Trade Commission.  Defendant obtained, or had available to it, substantial written materials that apprised it of its duties under the FCRA. Any reasonable employer would know of, or could easily discover, the FCRA's mandates.

*Plaintiff's First Concrete Injury under § 1681b(b)(2)(A)(i):*
*Informational Injury*

57.     **First**, as to the § 1681b(b)(2)(A)(i) claim, in accordance with the Eleventh Circuit's recent decision in *Church v. Accretive Health, Inc.*, 2016 U.S. App. LEXIS 12414, *1 (11th Cir. July 6, 2016), Plaintiff and the putative class members suffered a concrete **informational injury** because Defendant failed to provide Plaintiff and the class with information to which they were entitled to by statute, namely a stand-alone FCRA disclosure form.

58.     Through the FCRA, Congress has created a new right—the right to receive the required disclosure as set out in the FCRA—and a new injury—not receiving a stand-alone disclosure.   The Plaintiff's "inability to obtain [that] information" is therefore, standing alone, "a sufficient injury in fact to satisfy Article III." *Spokeo*, 136 S. Ct. at 1549. *See also Nicklaw v. CitiMortgage, Inc*., 839 F. 3d 998, 1002 (11th Cir. 2016) (noting that a "plaintiff who alleges a violation of a statutory right to receive information alleges a concrete injury"); *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015) ("Congress may create a statutory right or entitlement[,] the alleged deprivation of which can confer standing to sue even where the plaintiff would

have suffered no judicially cognizable injury in the absence of statute. In other words, "[t]he actual or threatened injury required by Art[icle] III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'").

59.    Pursuant to § 1681b(b)(2), Plaintiff and the putative class were entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure. Such a disclosure was required to be provided to Plaintiff before the consumer reports were to be procured.   By depriving Plaintiff and the putative class of this information, Defendant injured Plaintiff and the putative class members she seesks to represent. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

### *Plaintiff's Second Concrete Injury under § 1681b(b)(2)(A)(i): Invasion of Privacy*

60.    **Second**, as to the § 1681b(b)(2)(A)(i) claim, Defendant invaded Plaintiff's right to privacy. Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (*i.e.*, disclosure and authorization) set forth in the following subsections: 15 U.S.C. § 1681b(b)(2). As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A., Inc.*, 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015).  Plaintiff's consumer reports contained a wealth of extremely private information which Defendant had no right to access absent a specific Congressional license to do so. By procuring reports containing such private information

without complying with first complying with the FCRA's disclosure requirements, Defendant illegally invaded Plaintiff's rights to privacy.

61.    **Third**, as to the § 1681b(b)(2)(A)(i) claim, Defendant's above violations created a risk of harm that Plaintiff would be harmed in precisely the way Congress was attempting to prevent when it mandated what type of stand-alone disclosure employers must make to job applicants.   Without accurate information as to what to do if the information in their reports was inaccurate, a consumer would be left confused as to where to go to correct erroneous data contained in a report and be unable to know whether any erroneous data would find its way into future consumer reports.   Here, Defendant's disclosure purports to require Plaintiff and the putative class members to first allow Defendant to dig through their personal lives via a consumer report with wide-ranging access to a variety of sources, and then, even if the information gathered in the report was/is inaccurate and ultimately results in an adverse action being taken, the liability waiver included in the disclosure misleads Plaintiff and the putative class into thinking they waived any potential recourse against said entities.   This creates the precise type of "risk of harm" the FCRA, and Congress in passing it, prohibits.

62.    The stand-alone disclosure required by the statute was designed to be just that, a stand-alone disclosure, and nothing else.   It was designed with the intent to make it easier for consumers to understand their rights under the FCRA, not to make it easier for employers to gain unfettered access to information and to lead consumer/applicants into believing they had waived their rights by agreeing to its terms.   That is precisely what Defendant's form purports to do here.

17

63.     Furthermore, although Plaintiff did not authorize the background check due to Defendant's violations, she would not have agreed to provide Defendant with access to her consumer report regardless had she known Defendant's FCRA forms were non-FCRA compliant.

64.     As detailed above, *Spokeo* expressly recognized that "the risk of real harm" can be enough, on its own, to satisfy the concreteness requirement. 136 S. Ct. at 1549. In particular, where Congress has found that a violation of a statutory right poses a "material risk of harm," a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549–50; *see also id.* at 1553 (Thomas, J., concurring) ("A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.").

65.     **Fourth**, as to the § 1681b(b)(2)(A)(i) claim, the harm created by Defendant is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information.   Insofar as *Spokeo* directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for a lawsuit," Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private.  *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 134 (3d Cir. 2015).  Congress's reasons for enacting the FCRA show that it intended that the law be construed to promote the credit industry's responsible dissemination of accurate and relevant information, and afford consumers the substantive right to receive certain specified information, including a stand-alone disclosure *before* their consumer reports are

obtained by prospective employers. Thus, Plaintiff has alleged an injury-in-fact based on Congress's having created a substantive legal right, the invasion of which creates standing.

66.    Plaintiff and the Class are entitled to statutory damages of not less than one hundred Dollars ($100) and not more than one thousand Dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

67.    Plaintiff and the Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

*WHEREFORE*, Plaintiff, on behalf of herself and the Class, pray for relief as follows:

A.    Determining that this action may proceed as a class action;

B.    Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Class;

C.    Issuing proper notice to the Putative Class at Defendant's expense;

D.    Declaring that Defendant committed multiple, separate violations of the FCRA;

E.    Declaring that Defendant acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

F.    Awarding statutory damages as provided by the FCRA, including punitive damages; and

G.    Awarding reasonable attorneys' fees and costs as provided by the FCRA.

## SECOND CLASS CLAIM FOR RELIEF

**Failure to Obtain Proper Authorization in Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(ii)**

68.     Plaintiff alleges and incorporates by reference the allegations in paragraphs 1 through 50 of this Complaints, as though fully set forth herein.

69.     Plaintiff brings this action on behalf of the Class as described above.

70.     The authorization requirement under 15 U.S.C. § 1681b(b)(2)(A)(ii) follows the disclosure requirement of § 1681b(b)(2)(A)(i) and presupposes that the authorization is based upon a valid disclosure. "After all, one cannot meaningfully authorize her employer to take an action if she does not grasp what that action entails." *Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 699 (S.D. Ohio 2010).

71.     By using faulty disclosure forms Defendant procured a "consumer report," as defined by the FCRA, for named Plaintiff and members of the Class without proper authorization. *See* 15 U.S.C. § 1681b(b)(2)(A)(ii).

72.     The foregoing violations were willful.  Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the putative class members under 15 U.S.C. § 1681b(b)(2)(A)(ii).  Defendant knew or should have known of its legal obligations under the FCRA. These obligations are well established in both the plain language of the FCRA and in the promulgations of the Federal Trade Commission. Defendant obtained, or had available to it, substantial written materials that apprised it of its duties under the FCRA. Any reasonable employer would know of, or could easily discover, the FCRA's mandates.

73.     Defendants obtained or otherwise had available substantial written materials that apprised Defendants of its duties under the FCRA.  Any reasonable employer knows about or can easily discover these mandates.

20

74.     Further, Defendant hired Backgroundchecks.com, a well-respected national consumer reporting agency, to procure its consumer reports on Plaintiff and the Putative Class.   Importantly, Backgroundchecks.com made readily available to Defendant the FCRA's requirements.  In fact, the Backgroundchecks.com website contains on an entire section on the FCRA and FCRA compliance where it advertises its FCRA compliance services.[1]

75.     Thus, Defendant was clearly aware of its obligations under the FCRA, including with respect to keeping itself informed of the FCRA's obligations and as to its potential exposure for willful violations.

76.     Simply put, at the time that Defendant obtained consumer reports on Plaintiff without proper authorization, Defendant had access to a plethora of authority on FCRA and compliance, including the plain language of the FCRA, at least four FTC staff opinions, multiple federal court decisions, and a national consumer reporting agency that provided it with the knowledge and information regarding FCRA compliance.

*Plaintiff's Concrete Injury under § 1681b(b)(2)(A)(ii): Invasion of Privacy*

77.     **First**, in terms of Plaintiff's claims under § 1681b(b)(2)(A)(**ii**), the authorization requirement under 15 U.S.C. § 1681b(b)(2)(A)(ii) follows the disclosure requirement of §1681b(b)(2)(A)(i) and presupposes that the authorization is based upon a valid disclosure.  Thus, by violating §1681b(b)(2)(A)(i) Defendant invaded Plaintiff's right to privacy under §1681b(b)(2)(A)(ii). Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with

---

[1] https://www.backgroundchecks.com/learningcenter/fcracompliance

21

respect to any consumer, unless" it complies with the statutory requirements (*i.e.*, disclosure and authorization) set forth in the following subsections: 15 U.S.C. §1681b(b)(2). As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A., Inc.*, 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015).

78. Plaintiff's consumer report contained a wealth of extremely private information which Defendant had no right to access absent a specific Congressional license to do so. By procuring reports containing private information without complying with first complying with the FCRA's disclosure <u>and</u> authorization requirements, Defendant illegally invaded Plaintiff's and the putative class members' rights to privacy when it obtained a background check without Plaintiff's and the putative class members' authorizations to do so.

79. **<u>Second</u>**, in terms of Plaintiff's claims under § 1681b(b)(2)(A)(ii), Defendant's above violations created a risk of harm that Plaintiff would be harmed in precisely the way Congress was attempting to prevent when it mandated what disclosures employers must make to applicants. Without accurate source information as to what to do if the information in their reports was inaccurate, a consumer would be left confused as to where to go to correct erroneous data contained in a report and be unable to know whether any erroneous data would find its way into future consumer reports.

80. As detailed above, *Spokeo* expressly recognized that "the risk of real harm" can be enough, on its own, to satisfy the concreteness requirement. 136 S. Ct. at 1549. In

22

particular, where Congress has found that a violation of a statutory right poses a "material risk of harm," a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549–50; *see also id.* at 1553 (Thomas, J., concurring) ("A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.").

81.    **Third**, in terms of Plaintiff's under § 1681b(b)(2)(A)(ii), the harm created by Defendant is also concrete in the sense that it involves a clear *de facto* injury, i.e., the unlawful disclosure of legally protected information. Insofar as *Spokeo* directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for a lawsuit," Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private. *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 134 (3d Cir. 2015). Thus, Plaintiff has alleged an injury-in-fact based on Congress's having created a substantive legal right, the invasion of which creates standing.

82.    For these reasons, and as stated below, Plaintiff has sufficiently alleged that she suffered a concrete and particularized "injury-in-fact" in connection with their claims for violations of § 1681b(b)(2)(A)(i) and (ii) in accordance with the standards set forth in *Spokeo*.

83.    Plaintiff and the Class are entitled to statutory damages of not less than one hundred Dollars ($100) and not more than one thousand Dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages under 15 U.S.C. § 1681n(a)(2).

84.     Alternatively, and at a minimum, Defendants' actions were negligent.

85.     Plaintiff and the Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

**WHEREFORE**, Plaintiff, on behalf of herself and the Putative Class, demand:

a)      Designation of this action as a class action;

b)      Designation of Plaintiff as class representatives and designating Plaintiff's counsel as counsel for the Putative Class;

c)      Issuance of proper notice to the Putative Class at Defendants' expense;

d)      Declaration that Defendants committed violations of the FCRA;

e)      Declaration that Defendants acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f)      An award of statutory damages as provided by the FCRA, including punitive damages;

g)      An award of reasonable attorneys' fees and costs as provided by the FCRA; and

h)      For such other and further relief as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Putative Class demand a trial by jury for all issues so triable.

Dated this 29th day of August, 2017.

Respectfully submitted,

*Brandon J. Hill*

_____

**BRANDON J. HILL**
Florida Bar Number: 0037061
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Direct Dial: 813-337-7992
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: triciaw@wfclaw.com
**Attorneys for Plaintiff**

25